Slip Op 08 - 51

# UNITED STATES COURT OF INTERNATIONAL TRADE

```
                                          :
GILDA INDUSTRIES, INC.,                   :
                                          :
                         Plaintiff,       :
                                          :
             v.                           :    Before: MUSGRAVE, Senior Judge
                                          :    Court No. 07-00474
UNITED STATES,                            :
                                          :
                         Defendant.       :
                                          :
```

## OPINION AND ORDER

[Plaintiff importer Gilda Industries filed a complaint (and a motion for class certification) asserting that the 100% duties assessed pursuant to HTSUS 9903.02 should have terminated as a matter of law on July 29, 2007, pursuant to 19 U.S.C. § 2417(c) (2000). The government filed a motion to dismiss on the grounds that (1) Gilda lacked "prudential standing" to bring the claim and (2) section 2417(c) does not apply to USTR actions implemented over 4 years ago. The court denied Plaintiff's motion for class certification and denied Defendant's motion to dismiss.]

Dated: May 14, 2008

*Peter S. Herrick* for Plaintiff Gilda Industries, Inc.

*George G. Katsas* Acting Assistant Attorney General, *Jeanne E. Davidson* Director, *Patricia M. McCarthy* Assistant Director, *(David S. Silverbrand)* Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Office of General Counsel, Executive Office of the President, Office of the United States Trade Representative, *(William Busis)* of counsel, for Defendant United States.

Plaintiff Gilda Industries, Inc. ("Gilda"), is an importer of toasted breads from Spain. On

December 17, 2007, Gilda filed with the Court a complaint for damages for the 100% duties that

U.S. Customs and Border Protection ("Customs") has collected on Gilda's imports of toasted breads

since July 29, 2007. Gilda alleges that Customs has no legal authority to collect the 100% duties

because pursuant to 19 U.S.C. § 2417(c) the "retaliation list" established by the United States Trade Representative ("USTR") for the imposition of the 100% duties on certain imports from the European Community ("EC") expired by operation of law on July 29, 2007. Compl. at 2. Gilda requests that the court (1) make a finding that Customs has had no legal authority to collect the duties since July 29, 2007; (2) award to Gilda a refund, with interest, of all duties collected pursuant to the retaliation list since that date; and (3) "issue an order to prevent Customs from collecting 100% duties from Gilda on its toasted breads imported from Spain since on or about July 29, 2007." Compl. at 3. Also before the Court is Gilda's motion for class certification, wherein Gilda contends that there are 212 other importers affected by the HTSUS 9903.02 retaliation list, and that all of these importers should be certified as a class. Mot. for Class Certification at 3.

The government filed a motion to dismiss Gilda's claim on the ground that Gilda, as an importer, does not possess "prudential standing" to maintain the current action; alternatively, the government moves for dismissal for failure to state a claim on which relief can be granted. Def.'s Mot. to Dismiss and Resp. to Pl.'s Mot. for Class Certification at 1 ("Mot. to Dismiss"). The government opposes Gilda's motion for class certification and asserts that the Court should deny the motion because Gilda has "failed to demonstrate that this is a suitable case for class certification as a class action lawsuit." *Id.* For the reasons set forth below, the court will deny Gilda's motion for class certification and deny the government's motion to dismiss.

## I. Background

This case stems from a dispute between the EC and the United States over the EC's ban on imports of U.S. meat products from animals treated with hormones. In response to the EC's failure to comply with the findings of the World Trade Organization Dispute Settlement Body, which determined that the EC's ban on hormone-treated meat to be in contravention of its trade obligations, the USTR, pursuant to 19 U.S.C. § 2416, imposed 100% *ad valorem* retaliatory duties on a variety of EC exports to the United States. *See Implementation of WTO Recommendations Concerning EC-Measures Concerning Meat and Meat Products (Hormones),* 64 Fed. Reg. 14,486 (USTR Mar. 25, 1999). Among the products selected for the retaliatory list were those falling under subheading HTSUS 9903.02.35, which includes "rusks, toasted bread, and similar products."

In 2003, Gilda filed protests with Customs contesting the imposition of the retaliatory duties on various grounds. Customs denied the protests and Gilda ultimately filed suit in this Court. Before the Court, Gilda asserted, *inter alia*, that it should not be required to pay the 100% duties because the retaliation list had terminated as a matter of law pursuant to 19 U.S.C. § 2417(c), and alternatively, that Gilda should be removed from the retaliation list because the USTR failed to implement the "carousel provision" found in 19 U.S.C. § 2416. *See Gilda Industries, Inc., v. United States*, 28 CIT 2001, 353 F.Supp.2d 1364 (2004) ("*Gilda I*"). The Court dismissed Gilda's complaint for failure to state a claim upon which relief can be granted because (1) the domestic producers timely requests for the continuation of the retaliation list had prevented the list from terminating pursuant to 19 U.S.C. § 2417(c), and (2) implementation of the carousel provision would not necessarily result in Gilda's removal from the retaliation list. *Id.* On appeal, the U.S. Court of

Appeals for the Federal Circuit ("Federal Circuit') affirmed the relevant holdings of *Gilda I*, but

raised the question, *sua sponte*, as to whether Gilda possessed "prudential standing" under the

Administrative Procedure Act ("APA") to challenge the actions of the USTR. *Gilda Industries Inc.,*

*v. United States*, 446 F.3d 1271, 1279-80 (Fed. Cir. 2006) ("*Gilda II*").

## II. Jurisdiction

Gilda's claim facially invokes this Court's jurisdiction over this matter pursuant to 28 U.S.C.

§ 1581(i)(2) (2000) in that Gilda's claim arises out of a law "providing for . . . tariffs, duties, fees,

or other taxes on the importation of merchandise for reasons other than the raising of revenue," and

because no other basis for jurisdiction is available or the basis that is available will yield a remedy

which is manifestly inadequate. *Nat'l Corn Growers Ass'n v. Baker,* 840 F.2d 1547, 1555 (Fed. Cir.

1988); *see Gilda II*, 446 F.3d at 1277.

## III. Discussion

### A. Class Certification

Pursuant to CIT Rule 23(a), there are four prerequisites to class action. First, the class must

be so numerous that joinder of all members is impracticable. Second, there must be questions of law

or fact common to the class. Third, the claims or defenses of the representative parties must be

typical of the claims or defenses of the class, and finally, the representative parties must fairly and

adequately protect the interests of the class. In addition to these prerequisites, CIT Rule 23(b) states

that one of the three conditions pursuant to Rule 23(b)(1-3) must also be met.

According to Gilda's motion, the "class" that it purports to represent is the class of importers

that have continued to pay 100% duties pursuant to the HTSUS 9903.02 "retaliation list" subsequent

to July 29, 2007.  The court notes that in *Gilda I*, this court denied the plaintiff's motion for class

certification under circumstances almost identical to those present in this matter.  In that case the

court held:

> Because no other class members can be identified the court cannot
> determine whether joinder is practicable; there are no identifiable
> common questions of law or fact; and it is unclear whether Plaintiff's
> claims and defenses are typical of a putative class. It is therefore
> impossible to determine whether the requirements of class
> certification can be met. Even assuming that Plaintiff's claims to the
> contrary are true and a class of plaintiffs does exist, as a discretionary
> matter a class action should not be maintained. *See, e.g. Baxter
> Healthcare Corp. v. United States,* 20 CIT 552, 925 F.Supp. 794
> (1996). As Plaintiff has been unable to point to any other pending
> litigation concerning this issue, conflicting decisions are not a
> concern. There is also no limited fund problem, as the defendant is
> not a private litigant.

*Gilda I*, 28 CIT at 2005, 353 F.Supp.2d at 1368.

In the current matter, Gilda appears to contend that class certification is now warranted

because the class members have been "identified."  To this end, Gilda explains that, pursuant to a

Freedom of Information Act ("FOIA") request, "the government identified 212 importers who were

paying the 100% duties," citing  *Gilda Industries, Inc., v. U.S. Customs and Border Protection*, 457

F. Supp. 2d  6, 8 (D.D. C. 2006), the case it brought against Customs to enforce the FOIA request

(which Customs had denied).

The court does not agree that the circumstances in this matter are appropriate for class

certification.  Although Gilda's proposed class of plaintiffs appears to meet the numerosity

requirement, the fact that 212 potential plaintiffs may exist in a class does not, by itself, equate to

those class members being "identified." In Gilda's FOIA case against Customs, Gilda indicated that

it had submitted a request that Customs provide "the names and addresses for all importers for the quarter ending September 30, 2003" who were paying the 100% duties pursuant to HTSUS 9903.02. Customs responded that there were 212 importers subject to the 100% duty at that time, but otherwise refused to divulge the identities of the importers pursuant to FOIA's confidentiality exception. The District Court upheld the denial on the ground that disclosure of the information sought by Gilda "could be used to inflict competitive injury on the companies," and noted that several of the importers in question had submitted letters to Customs requesting that the information remain confidential. *Id*. at 11, 12.

Knowing the probable number of importer-plaintiffs that might ultimately involve themselves in a class action (assuming that data from the last quarter of 2003 accurately represents the number of potential plaintiffs in 2007) does not identify the other plaintiffs in a manner that enables the court to determine whether joinder of those plaintiffs is practicable, whether there are necessarily questions of law or fact common to the class, or whether Gilda's claims and defenses are typical of the class. Further, because neither party is aware of any other plaintiff with pending litigation on this issue, there is no danger of conflicting decisions, and no indication that class action would be superior for the fair and efficient adjudication of the controversy, *see* CIT Rule 23(b)(1), (3). Finally, the government has not refused to act on any grounds such that injunctive or declaratory relief would be appropriate to a class as a whole, *see* CIT Rule 23(b)(2). Accordingly, Gilda's motion for class certification will be denied.

## B.  Prudential Standing - Zone of Interest

Title 5 section 702 (Section 10(a) of the APA), provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review."  However, despite the APA's generous review provisions, "it was [never] thought . . . that Congress, in enacting § 702, had . . . intended to allow suit by every person suffering injury in fact." *Clarke v. Sec. Indus. Ass'n,* 479 U.S. 388, 395 (1987).  Accordingly, courts have supplied "gloss" to the language of the APA, by adding to the requirement that the complainant be 'adversely affected or aggrieved,' *i.e.,* injured in fact, the additional requirement that "the interest sought to be protected by the complainant [be] arguably within the *zone of interests* to be protected or regulated by the statute . . . in question."  *Id.* at 395-96 (emphasis added) (quoting *Ass'n of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152-153 (1970)).

The most widely-cited discussion of the zone of interests test is set forth in *Clarke v. Sec. Indus. Ass'n*, where the Supreme Court held:

> The "zone of interest" test is a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision.  In cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.

*Clarke*, 479 U.S. at 399-400.

In applying the "zone of interests" test, the court does not ask whether, in enacting the statutory provision at issue, Congress specifically intended to benefit the plaintiff.  Instead, the court

must first discern the interests "arguably . . . protected or regulated" by the statutory provision at

issue; then the court must "inquire whether the plaintiff's interests affected by the agency action in

question are among them." *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.,* 522 U.S.

479, 492 (1998). In the instant case, therefore, the court must initially determine what interests

section 2417(c) arguably protects. We must then ask whether the interests that Gilda alleges have

been affected by the challenged agency action are among the interests arguably protected or regulated

by section 2417(c).

### 1. The Interests Arguably Protected by the Statutory Provision in Question

The Supreme Court's instruction that the courts consider "the overall context" of the relevant

statutory framework in deciding which interests are arguably protected, *Clarke,* 479 U.S. at 401, was

not meant to narrow the award of prudential standing, but to broaden it. *Bennett v. Spear*, 520 U.S.

154 (1996) reaffirmed a well-established doctrine that a plaintiff's suit need not "vindicate the

overall purpose" of a statutory regime so long as the plaintiff's interest is arguably regulated or

protected by "the specific provision which they alleged had been violated." *Bennett*, 520 U.S. at 176.

Hence, although an examination of the overall context of the pertinent statutory framework would

be relevant, the focus here is ultimately on the specific provision under which Gilda asserts

protection: 19 U.S.C. § 2417(c). *See Id. See also Data Processing*, 397 U.S. at 154 (holding that

"where statutes are concerned, the trend is toward enlargement of the class of people who may

protest administrative action.").

The relevant statutory sections are found in The Omnibus Trade and Competitiveness Act

of 1988 ("the Act") which provides, in pertinent part:

> SEC. 1001. FINDINGS AND PURPOSES.
>
> (b) PURPOSES. -- The purposes of this title are to --
> (1) authorize the negotiation of reciprocal trade agreements;
> (2) strengthen United States trade laws;
> (3) improve the development and management of United States trade strategy; and
> (4) through these actions, improve standards of living in the world.
>                         *   *   *
> SEC. 1301. REVISION OF CHAPTER 1 OF TITLE III OF THE TRADE ACT OF 1974
>                         *   *   *
> CHAPTER 1– ENFORCEMENT OF UNITED STATES RIGHTS UNDER TRADE AGREEMENTS AND RESPONSE TO CERTAIN FOREIGN TRADE PRACTICES

100 P.L. 418, 1001. As the above-quoted passage indicates, the broad purpose of Chapter 1 (sections 301-309, as amended, codified at 19 U.S.C. §§ 2411-2419 (2000)) is to strengthen U.S. trade laws by providing a means for the enforcement of United States rights, such as the imposition of certain retaliatory measures against foreign countries that violate trade policies. *See generally* section 2411. Much of the Senate testimony offered in consideration of the Section 301 amendments highlights the broad purpose of achieving foreign compliance with trade laws (through various retaliatory measures); however, that purpose was balanced by an acute concern that, because retaliation often backfired, any retaliatory action must be implemented with the utmost care, and without causing undue harm to broader national economic interests. As noted in the floor statements of Alan Holmer, then USTR General Counsel:

> In considering any amendment to Section 301, I hope that you will ask one key question: Will this amendment help or hurt the ability of U.S. negotiators to pry open a foreign market to U.S. exports? It really comes down to this issue: Is Section 301 an import relief law, or is it a negotiating tool? If you believe, as I do, that it is a negotiating tool, I would implore you to avoid mandatory retaliation.

> Retaliation really means failure. It may make us feel better temporarily. It may provide import relief for another U.S. industry. But . . . the U.S. Industry that brought the case is generally not going to sell a nickel's more goods in that foreign market simply because we have retaliated. In fact, their sales may go down because of subtle or sometimes not so subtle counter-retaliation.
> . . .
>
> [R]etaliation is not cost-free. We retaliated against the Europeans in the citrus case. They hit us back on nuts and lemons. We announced retaliation in the EC enlargement case. They threatened counter-retaliation on corn-gluten feed. Legislatively, it seems to me you need to give us the tools which we already (for the most part) have under Section 301, and then use your political leverage to make sure that this Administration and future administrations act.

Senate Hearing 100-474, March 17, 1987 (testimony of Alan Holmer, General Counsel, USTR).

The balancing of concerns reflected in this statement reinforces the notion that although the broad purpose of the Act is to strengthen trade policy by providing an effective means of retaliation, Congress was also keenly aware that such retaliation might cause more problems than it solved. Accordingly, sections 301-308 were equipped with several provisions requiring the USTR to consider any potential economic consequences prior to, and subsequent to, the implementation of retaliatory actions. *See* 19 U.S.C. §§ 2411(a)(2)(iv) (providing that the USTR is not required to take action under section 301 if such action "would have an adverse impact on the United States economy substantially out of proportion to the benefits of such action"); 2416(d) (providing that in revising the retaliation list, the USTR "shall act in a manner that is most likely to result in the country or countries implementing the recommendations adopted in the dispute settlement proceeding"); *see also Proceedings Concerning the [EC's] Regime for the Importation, Sale and Distribution of Bananas and the [EC's] Measures Concerning Meat and Meat Products*, 65 Fed. Reg. 34,786-87

(May 31, 2000) (describing the function of USTR's Section 301 Committee as "to closely monitor

actions taken under section 301 to ensure that such actions remain practicable and effective in terms

of obtaining the elimination of the acts, policies, or practices of foreign governments that are the

subject of the 301 investigation.").

### a. Interests Arguably Protected or Regulated by Section 2417(c)

Section 2417(c) provides

> (c) Review of necessity.
>   (1) If--
>       (A) a particular action has been taken under section 301 [19 U.S.C. § 2411] during any 4-year period, and
>       (B) neither the petitioner nor any representative of the domestic industry which benefits from such action has submitted to the Trade Representative during the last 60 days of such 4-year period a written request for the continuation of such action,
>   such action shall terminate at the close of such 4-year period.
>   (2) The [USTR] shall notify by mail the petitioner and representatives of the domestic industry described in paragraph (1)(B) of any termination of action by reason of paragraph (1) at least 60 days before the date of such termination.
>   (3) If a request is submitted to the [USTR] under paragraph (1)(B) to continue taking a particular action under section 301, the [USTR] shall conduct a review of--
>       (A) the effectiveness in achieving the objectives of section 301 of-
>           (i) such action, and
>           (ii) other actions that could be taken (including actions against other products or services), and
>       (B) the effects of such actions on the United States economy, including consumers.

19 U.S.C. § 2417(c)(2000).  Although there is very little discussion of this subsection in legislative

history, section 2417(c) fits easily into the scheme of provisions requiring the USTR to assess (or

periodically reassess) the effectiveness of actions taken pursuant to section 301.   First, the

"Termination" provision becomes effective only where, after having been in effect for 4 years,

"neither the petitioner *nor any representative of the domestic industry which benefits from the action* has submitted . . . a written request for the continuation of such action." *Id*. (emphasis added). The court finds that this provision is consistent with the expressed congressional intent that retaliatory actions be closely monitored to ensure that the intended beneficiaries continue to reap some benefit; where no beneficiary requests the continuation of an action, a question is raised as to whether the action is continuing to have the desired effect.[1] If the representatives of the domestic industry maintain their silence even after the USTR provides to them notice pursuant to section 2417(c)(2), the 301 action terminates.

Further, section 2417(c)(3) provides that even where the intended beneficiary of the USTR's action submits a request for the continuation of the action, the USTR must perform a review to determine the action's "effectiveness in achieving the objectives of section 301" and "the effects of such actions on the United States economy, including consumers."

### 2. Whether Gilda's Interests Affected by the USTR's Failure to Act are Among the Interests Arguably Protected or Regulated by Section 2417(c).

Gilda asserts that it has an interest in remaining competitive, and an interest in not paying the 100% duties if it is not legally required to do so. Reply at 2. To this end, Gilda "seeks the protection of section 2417(c)(1)(B)." The government argues that Gilda does not have prudential standing to sue because Gilda "cannot prove an indication of congressional intent, explicit or implicit, in section 301 to grant protection to importers." As supporting evidence for that conclusion, the government

---

[1] This distinguishes section 2417(c) from the carousel provision discussed by the Federal Circuit in *Gilda II* which required the USTR to review (but not necessarily modify) the retaliation list every 180 days, with no request from the domestic industry prompting such action. *See* section 3 discussion, *infra*.

points out that the definition of "interested persons" set forth in section 301(which apparently includes importers) does *not* apply to § 2417(c).  Def.'s Mot. to Dismiss and Resp. to Pl.'s Mot. for Class Certification at 8.   *See* section 307(c) (19 U.S.C. § 2417(c)).

This argument is insufficient for at least two reasons.  First, it directly contravenes the Supreme Court's directive that "there need be no indication of congressional purpose to benefit the would-be plaintiff," and that a "cause of action for review of [agency] action is available absent some clear and convincing evidence of legislative intention to preclude review." *Clarke* at 398.  Second, the argument seems to have ignored that the *Data Processing* zone of interests test also consists of inquiry into "regulated" interests, not merely "protected" interests.  Although few courts have had occasion to decide prudential standing issues by inquiry into whether a plaintiff's interests were within the "regulated" zone of interests, the court does not see that as a reason to discard that term from the zone-of-interest test.  However, considering the paucity of case law discussing what it means to be "regulated" in this context, the court must take guidance from the general policy that review under the APA is "generous," and  that the "zone" considered adequate to sustain judicial review "is particularly broad in suits to compel federal agency compliance with the law." *FAIC Securities Inc. v. U.S.*, 768 F.2d 352, 357 (D.C. Cir. 1985).

The court finds that Gilda's interest is arguably regulated by sections 2411-2417.  Because Gilda is required to pay duties pursuant to actions taken under those provisions, those provisions regulate Gilda's implicit interest in maintaining profit,  remaining competitive, and in transacting in imported merchandise.  Although the statute is not directed to importers and does not by its terms compel action by them or impose penalties upon them because of certain acts or failures to act, the USTR's actions taken pursuant to section 2411 (such as imposing 100% retaliatory duties) certainly

does compel action, either in the payment of the duties or in the modification of business plans.

Hence, Gilda is still arguably regulated by the statute indirectly. *See Cotovsky - Kaplan Physical*

*Therapy Assoc., Ltd. V. United States*, 507 F.2d 13631367 (7th Cir. 1975). Further, section 2417(c)

regulates when the USTR must act to terminate, modify, or review actions (such as retaliatory duties)

in effect pursuant to section 2411. Because section 2417(c) sets the standards for when the USTR

must take action to terminate a retaliatory measure, the USTR's failure to follow the directive of the

statute results in the continued payment of retaliatory duties that may no longer be desired by the

domestic industry beneficiaries.

Finally, although it is true that Gilda is not designated as one of the parties to be consulted

if the USTR received a request to continue the action, importers such as Gilda *were* encouraged to

submit comments and testimony at several stages before the implementation of the retaliation list.

*See* 64 Fed.Reg. at —, —,—. As such, the USTR cannot argue that the interests of importers played

no part in the consideration of retaliation lists, or that importers were excluded from an analysis of

"the effects of such actions on the United States economy." 19 U.S.C. § 2417(c)(3). The

government states correctly that the definition of "interested persons" found in section 2411(d)(9)

specifies that it applies "*only* for the purposes of sections 2412(a)(4)(b), 2414(b)(1)(A), 2416(c)(2),

and 2417(a)(2) of this title." 19 U.S.C. § 2411(d)(9) (2000). However, the court does not find this

fact to be particularly revealing of congressional intent because the term "interested persons" is

simply not found in section 2417(c). Furthermore, because the term "interested persons" *is* used

(and defined somewhat differently) in several *other* sections of Ttitle 19, the court is unconvinced

that the definition in section 2411(d)(9) should be seen as anything more than a simple clarification.

Accordingly, the court is unable to find the fact that "interested persons" as defined in section

2411(d)(9) does not apply to section 2417(c) is "convincing evidence of legislative intention to preclude judicial review."

### 3. Gilda's Interests are not Contrary to the Purpose of Section 2417(c).

The government next asserts that Gilda does not have prudential standing to challenge the USTR's failure to act because Gilda's interests are *contrary to the purpose* of the statute. Mot. to Dismiss at 8-9. In support of this contention, the government quotes the Federal Circuit's decision in *Gilda II,* where that Court considered, but did not decide, the issue of prudential standing as it related to 19 U.S.C. § 2416 (the "carousel" provision). In that case, the Federal Circuit observed:

> On the one hand, the injury Gilda complains of is precisely the "pain" Congress intended to inflict through the carousel provision. Senator DeWine made that point clearly in the course of the Senate debate on the Trade and Development Act of 2000:
>
>> What is a nation to do if its current list of imports subject to retaliatory tariffs is not working to move the offender such as the E.U. into compliance? The solution, I believe, is to seek other products to target and at tariff levels that will impose the kind of pain that will cause the European Union to see compliance as the remedy . . . That is what this amendment is about.
>
> 145 Cong. Rec. 26,933-34 (1999). Thus, Gilda's suit may be viewed as seeking relief that is contrary to, and would frustrate, the objectives of the statute.

*Gilda II*, 446 F.3d at 1280.

The Federal Circuit brings up an important point: Are Gilda's interests as an importer so "inconsistent with the purpose implicit in the statute" that Congress must have intended to preclude judicial review? The court is dubious as to whether a plaintiff's interests could be "arguably regulated" by the relevant statute on the one hand, but on the other hand have those interests be so "inconsistent" with the purposes of the statute that standing should be denied. The court need not

decide that question here, however, because for the reasons stated below, the court finds that Gilda's interests are not "inconsistent with the purposes of the statute" and that Gilda does indeed possess prudential standing to pursue the present cause of action.

First, the court does not agree that the purpose of section 2417(c) is accurately described as simply or rather only to "impose . . . pain." As noted above, the purpose of section 2417(c) is to set certain standards for when a 2411 "action" should be terminated – standards that reflect the underlying legislative intent that the retaliatory provisions be implemented only when and continue only so long as necessary; at the very least, the intended beneficiaries must express their support for the continuation of a 301 action when it is proper to do so.

In this case, Gilda's interest in not paying the retaliatory duties – particularly when none of the intended beneficiaries has come forward to request the continued imposition of those duties – is not contrary to the purpose of the statute. Although Congress apparently did not intend to protect importers specifically, one of the interests arguably to be protected by the statute was the interest in ensuring actions pursuant to 2411 effectively continue to serve their purpose. Requiring action by the USTR pursuant to 2417(c) when the domestic industry beneficiaries have failed to request continuation of the action is hardly contrary to that purpose; moreover, even though it is clear that Gilda's objectives have nothing to do with ensuring the effectiveness of retaliatory actions, that fact is not fatal to Gilda's claim, but considered "beside the point." *Nat'l Credit Union*, 522 U.S. at 499.

Additionally, the court notes that the few Supreme Court cases that deal with the "inconsistent with the purposes implicit in the statute" aspect of the zone-of-interests test seem to focus less on the plaintiff's underlying interests and more on the disruptions to the statutory scheme that would occur if the Court were to afford judicial review to the interloping party. In *Block v.*

*Community Nutrition Institute*, 467 U.S. 340 (1984), the Court noted:

> Allowing consumers to sue the Secretary would severely disrupt this complex and delicate administrative scheme. It would provide handlers with a convenient device for evading the statutory requirement that they first exhaust their administrative remedies. A handler may also be a consumer and, as such, could sue in that capacity.

*Block,* 467 U.S. at 347-48. Hence the Court found that because allowing consumers to sue under the statute would be so disruptive to the administrative scheme, Congress could not have intended consumers to be proper parties to sue under the statute. The Fourth Circuit used a similar line of reasoning in *Leaf Tobacco Exporters v. Block*, 749 F.2d 1106 (4th Cir. 1984). In that case, the Leaf Tobacco Exporters Association challenged the decision of the Secretary of Agriculture to permit a growers' cooperative to sell its tobacco directly to foreign purchasers. The Court noted that the relevant statute was designed to ensure minimum revenues for growers and was created for "the purpose of stabilizing, supporting, and protecting farm income and prices." *Id*. at 1116. The Court denied standing, holding that "[w]here Congress has in this manner clearly defined the class to be protected, the zone of interest test works to prevent groups outside of the class from usurping the legislative entitlement. The goal is especially urgent when, as here, such usurpation would come at the expense of the intended beneficiaries."[2] *Id*.

In this case Gilda's interests are not contrary to the purpose of section 2417(c), and allowing Gilda to sue the government over its failure to enforce the statute would not, as far as the court can

---

[2] The ruling in this case may also relate to when a plaintiff should be denied prudential standing under the "suitable challenger" test referenced in *Clarke*, where the Supreme Court further described the zone of interest test as an inquiry as to "whether Congress intended for [a particular] class [of plaintiffs] to be relied upon to challenge agency disregard of the law." *Clarke* at 399.

see, "disrupt" a complex scheme of enforcement, nor would it allow Gilda to "usurp legislative entitlement" at the expense of the intended beneficiaries. On the contrary, where an action is supposed to terminate under section 2417(c), the intended beneficiaries may be presumed no longer benefitted, rendering the continuation of that particular section 301 action ineffectual. Accordingly, the court finds no reason to deny Gilda prudential standing to compel the USTR to take action pursuant to the mandate of section 2417(c).

### C. 12(b)(5) Motion to Dismiss

In deciding a USCIT R. 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted, the Court assumes all factual allegations to be true and draws all reasonable inferences in the plaintiff's favor. *Cedars-Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583-84 & n. 13 (Fed. Cir. 1993); *Henke v. United States,* 60 F.3d 795, 797 (Fed. Cir. 1995) (subject matter jurisdiction); *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed. Cir. 1991) (failure to state a claim). Dismissal for failure to state a claim upon which relief can be granted is proper if the plaintiff's factual allegations are not "enough to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. __ (2007) (citations omitted).

The government contends that Gilda's claim must fail as a matter of law because the termination provision contained in section 2417(c) is not applicable in this matter, and that "Gilda's contentions are contrary to the plain language of the statute." Mot. to Dismiss at 12. Specifically, the government argues that the phrase "a particular action . . . under section 2411" refers only to the initial "action" undertaken by the USTR to impose the retaliation list. "Contrary to Gilda's contention, actions taken pursuant to section 2411 do not include the *continuation* of a particular

action under section 2411." *Id*. at 4 (emphasis added).  Under the government's interpretation of the

statute,

> to "take action" pursuant to Section 301 means the exercise of authority
> under section 2411(c) to modify the tariff schedule of the United
> States to increase duties on certain imported products.  That action
> must be taken by a certain statutory deadline, after consultation with
> interested persons, and may not be modified or terminated unless the
> USTR takes further action, pursuant to specific statutory procedures
> that include consultation with specific persons.  Gilda's contention –
> that the USTR is "taking action" each day that an action remains in
> effect – is, thus, inconsistent with the statutory structure that provides
> specific deadlines for taking action, requirements for public
> consultation before taking action, and that new action is required to
> modify or terminate a prior action.  If, as Gilda contends, Congress
> intended for USTR to review an action every four years, Congress
> would have used such language in the statute.

Def's Reply at 6.  The Government ultimately concludes that "because the USTR has not taken "a

particular action" pursuant to section 2411 in the past four years, termination pursuant to section

2417(c) is inapplicable to the retaliation list." *Id*. at 7.

In examining the text of the statute and its legislative history, as well as using plain common

sense, the court finds no support for the government's interpretation of section 2417.  First, the notion

that "an action under section 2411" refers only to the initial USTR decision to implement the

retaliatory duties – and not the continued imposition of those duties – is contrary to the language of

the statute itself.  Section 307 (19 U.S.C. § 2417) is entitled "Modification and Termination of

Actions."  If, as the government argues, the "actions" to be modified or terminated pursuant to §2417

refer only to isolated acts and "do not include the *continuation* of a particular action under section

2411," how those actions could be "modified" or "terminated" is indeed a puzzle.  Indeed, even the

specific section at issue (2417(c)) provides that if the conditions pursuant to subsections (A) and (B)

are met, "such action" – that is, the particular action taken under section 301– "shall terminate at the

close of such 4-year period."  19 U.S.C. § 2417(c).  Because an action cannot terminate unless the

action is somehow continuing, the court is unable to accept that the "action" to which the statute

refers is not a continuing one.

For good measure, the court notes that the legislative history regarding 2417(c) also directly

contradicts the government's interpretation of the statute.  The House of Representatives Conference

Report describing the Senate amendment to modify section 307(c) (eventually codified at 19 U.S.C.

§ 2417(c)) from a biennial review to its current version states:

> The Senate amendment also provides that any action will
> automatically terminate if it has been in effect during any four-year
> period and neither the petitioner nor any representative of the domestic
> industry submits to the USTR a written request for continuation during
> the last 60 days of the four-year period.  USTR must notify by mail the
> petitioner and representatives of the domestic industry at least 60 days
> before the date of termination.

House of Representatives Report 100-576 at 564.  The House Report states expressly that the actions

will terminate "if it has been *in effect* during any four-year period."  The House Report makes no

reference to when the USTR's decision to implement the action took place.  Moreover, the court is

unable to see how an action that has been "in effect," can be interpreted as anything other than

continuous.

Finally, common sense does not support the government's interpretation.  Although Customs

may collect the duties pursuant to actions implemented pursuant to section 2411, that duty is only

ministerial; the legal authority to collect those duties continually emanates from USTR.  The

government's interpretation would have us believe that, once implemented, the authority of the USTR

is at an end, or that the USTR bears no more responsibility for the matter.  Such is hardly the case.

*See Gilda II* (holding that challenge to Customs action to collect the duties is unnecessary). Accordingly, the court cannot accept the government's interpretation of section 2417(c) as "inapplicable" to this matter, and the government's motion to dismiss will be denied.

### IV. Conclusion

Upon consideration of the foregoing analysis, the court hereby (1) denies the plaintiff's motion for class certification; and (2) denies the government's motion to dismiss. The government shall timely file an answer to the allegations set forth in the plaintiff's complaint in accordance with the Court's Rules.

**SO ORDERED**.

/s/  R. Kenton Musgrave
R.  KENTON MUSGRAVE, Senior Judge

Dated: May 14, 2008
New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.


Tina Potuto Kimble
Clerk of the Court


Date: _____        By: _____

                                                          Deputy Clerk